Good morning. May it please the court. My name is Katherine Hart, representing Jose Hernandez-Velazquez. Your Honors, in this case, the district court carefully elucidated to my client the perils and pitfalls of self-representation. What the district court failed to do was to enumerate to my client the penalties attendant to the crimes for which he was charged. Wasn't he told that at the arraignment? Yes, in part, in part. At the original arraignment, one and a half years before, in April of 2011. He was told at the arraignment that each of four counts, each of three counts, pardon me, carried a 30-year maximum, and his attorney said, wait a minute, Judge, there are four counts. So that's four times 30 years, that's 120 years, and that's each count, right? And he was also told that there was a 15-year minimum. I agree exactly. And is there any evidence in the record of a medical condition called amnesia, that he forgot what he was told? There's no indication in the record of amnesia. So your position is that it's part of the constitutional duty of a judge taking a Feretta plea to refresh the recollection of the defendant by newly advising him as to the minimum and maximum penalties of each count? Yes. But I do wish, if I may ---- Do you have any authority for that? Well, Your Honor, if I may answer that, the Erskine case and the Ballew case, they do talk about what the defendant knew at the time. It's always looking at what was known at the time of the waiver. But I wish to argue the fact that at the time of arraignment, when my client was told that there were ---- he was told by the district court that there were three counts carrying 30 years. He was not told by the district court himself that there were four counts. Yes, the trial attorney did correct the court and say that there were four counts, but the trial attorney said there were four counts carrying a minimum of 15 years apiece nowhere. Is there any place in the entire record where my client was told that there were four counts carrying 30 years total and that those counts could be aggregated cumulatively for a total exposure of 120 years? That is never in the record. He was told that each count has 30 years, right? Yes. He was not told that each count had to be run concurrently. He was told that each count could carry 30 years at a time when he was told that there were three counts. That is a total failure to enumerate the applicable potential penalties in the case. It also requires an inference that a defendant hearing each count carries 30 years would automatically in his own mind know that the 30 years would be consecutive and cumulative. That should have been enumerated. But counsel, even if he was only told about three counts, 30 years, that would be 90 years, right? Correct. He didn't get 90 years. He got 60 years. That's absolutely correct. But if you look at the case law in this type of case, in the Erskine case, the defendant who had made threats to an FBI agent was told, was asked, the defendant was specifically asked at the Feretta waiver, how much time does this offense carry? And the defendant said it carries one year. Well, in fact, the offense carried five years. He was told later in a sentencing trial brief by the prosecutor that the offense could carry three, and it was corrected at trial that it was going to be five. Now, it doesn't really matter what a defendant ultimately gets. What matters is what is in the mind of the defendant at the time that the defendant enters his Feretta waiver. And in this case, I don't think that the original arraignment a year and a half ago, which did not completely and explicitly define the potential penalty, I don't think that that was cured in the interim by the fact that two plea offers were conveyed. The information at the arraignment told him, the judge said, three counts, 30 years each. His attorney corrected it, there are really four counts, and they each have a 15-year minimum, correct? That is absolutely correct. So you're saying that because that the judge didn't say, yes, there are four counts, he didn't say one way or the other, he didn't comment on that, that that is constitutional error under Feretta? Yes, because the court, it is the court's obligation and not the defense attorney's obligation. It's the court's obligation, and that was defined, well-defined in the Ballew case from 1987, that the court has an obligation to enumerate the crimes, the penalties, and the pitfalls of self-representation. And it's only in rare cases, in rare cases, that there's an exception to the court's failure to define. And here I'm arguing, I hope not ad nauseum or repeatedly, that the explanation to the defendant at the arraignment was really wholly insufficient, and that that responsibility couldn't be discharged to the defense attorney who said each count carries a minimum, because the court never specifically. And explicitly told the defendant exactly what the charges were or what the penalties were. And because of the fact that it's only a rare case in which the court can look to the surrounding circumstances, I'm arguing that my client's lack of sophistication, lack of previous experience with the criminal justice system, that's one of the factors that the courts look at, and it's one of those factors that was in the Gerritsen case, where the individual had done approximately six jury trials on his own. And also, another one of the factors, and I think this is outlined by the U.S. Supreme Court in the Tovar case, and that is that you look at the complexity of the charges, and you also look at the – whether the charges are simple to discern or complex to discern. And in this case, the charges were never specifically enumerated to the defendant. Yes, he was told back at the arraignment that he was charged with United States Code Title 18-2251, subsection A, but those charges were never specifically outlined to him of what the elements were involving the sexual exploitation of a minor. And I would further argue that the charges here are very complex, because they do – they require, one, that there be a sexual depiction of a minor, two, that there's exploitation, and three, that the pictures were either sent through interstate commerce or that the materials used to make those depictions came through interstate commerce. So my argument is also that besides not explaining the specifics of the attendant to these charges, that these charges were not explained and defined to the defendant. Now, did the defendant probably know roughly what he was charged with? Of course. That's quite clear with his colloquy to the Court in – regarding whether he was arrested on March 8th, March 9th. It's clear, I think, that he had some semblance of an idea of what these charges were. But the Court never elucidated from the client whether the client knew what the charges were, where the client knew what the elements were. So there are deficiencies both in the failure to go over with the defendant the charges and the failure to review the penalties. And, I mean, I respect, of course, Your Honor, that you're telling me that the Court did explain the penalty back a year and a half ago. That's true. But that was not adequate because it didn't cover from the Court the four counts and the maximum possible exposure. Now, do I have any time left for rebuttal? Yes, you have some time, counsel, if you wish to reserve. Yes, thank you. We'll hear from the government. Good morning, Your Honor. It's Brian Enos, United States. The Ballew case doesn't require the district court to cite to or to explicitly state all three elements of the Furetta waiver of right to counsel. It says that's the preferred procedure. Nevertheless, if all three elements aren't in that actual Furetta hearing, then you can go to the entirety of the record, as stated in Gerritsen. This case has actually stronger facts than Gerritsen because Gerritsen involved, at the time that the district court deemed defendant to have knowing and intelligently waived his right to counsel, an inaccurate statement of the maximum penalties, later rectified in an arraignment from a superseding indictment down the line. Here, right off the chute, we have an accurate statement of the maximum penalties. So, what we have here is a Gerritsen case where you can look at the entirety of the record and clearly discern that the defendant was indeed made aware of the risks attendant to representing himself, which the defendant acknowledges was very clear and thorough out of Judge O'Neill, as well as the nature of the charges and the maximum penalties. So, we really have a Gerritsen case on all fours. It's important to look back at the evolution of the jurisprudence in the Ninth Circuit with respect to these cases, because if you do, you'll find that it's all consistent and it's thorough. Back in 1987 in Ballew, the court found, you know what, district court did not adequately advise defendant of the risks involved in representing himself. So, even though he was allowed to represent himself, we're going to remand him because we want to make sure it's knowing and intelligent. So, 1994 in the Arlt case, the Ninth Circuit found on the opposite side of the coin, you know what, he was adequately advised of the risks involved. As a side note, there's no reference in the Arlt case to either maximum penalties or nature of the charges. But what Judge Reinhart did say is, look, this guy, it was a knowing and intelligent waiver. He was deprived of his right to represent himself, which, as soon as there's a finding that it's knowing and intelligent, is an equally important right under the Sixth Circuit. And that in itself goes back to the colonial times and explains how important this right is in our country. And so, in Arlt, it likewise remanded back to the district court, said, you know what, he, it was a knowing and intelligent waiver and he was deprived of his right to represent himself. Fast forward to Garretson, it finds, like this case, there was a thorough explaining to defendant of the risks involved in representing himself. However, that's the hard part of the three factors. However, the court, in this case, Judge Yakuda, she wrote the opinion, said, we're still going to look to the record to make sure that he was nevertheless made aware of the other elements. In that case, as well as this case, the nature of the charges and the maximum penalties. Here, we have clear four counts of production of child pornography right out the chute. He was advised of that. He was advised of the penalties. That never changed. There's no moving target here like there was in Garretson. There's an immutable target that didn't go anywhere. I would even say the record even suggests that as recently as two weeks before trial, the very day that Judge O'Neill determined, okay, you're knowingly and intelligently waiving your right to counsel, he was, he also stated on the record that he received the two plea offers that the government provided in this case. In those offers themselves, they include, in paragraph two of each, specific listing of the elements of the charges, paragraph six of each of them, specific maximum and as well as statutory minimum penalties. And so one count. With respect to production of child pornography. But in this case, we only had one type of count, four separate counts based on the dates. But what I'm saying is the plea agreement only mentioned one count, not four counts. Well, the very paragraph one, I believe it says he was charged with four counts, but he's going to agree to plead to count one. They're all the same count with respect to the statute reference. And so what we have ---- Is there anything in the plea agreement that says that the other three counts with which he's not charged carry the same penalties as the count on which he's charged? That he's going to plead guilty to? No. Well, I would say implicitly, yes. What it says is he's been charged with four counts of X, in this case 2251 of Title  III, he's pleading to count one. And then you go later into the plea offer and it states here's the elements of count one, here's the potential penalties of count one. So in this case, not only at the beginning of the case was he advised of the charges against him and the potential penalties, but also just two weeks prior to trial and at the conclusion of the third closed ---- I wasn't allowed in the courtroom to close hearing where Judge O'Neill thoroughly explained to him, you're crazy to be representing yourself, here's all the pitfalls attendant to representing yourself, okay. But that's not in dispute. That's not in dispute. So what Your Honor has correctly done is honed in on this nature of penalties and nature of charges and penalties. That's really the factual issue here. And the government's position is, in light of Garrison, which says, you know what, you can look at the entirety of the record, because we just care that he knows and that it was knowing and intelligent, because this Court is well aware of his Sixth Amendment right to represent himself is equally strong as his right to counsel so long as it's knowing and intelligent. The government welcomes any questions. No questions, apparently. So we will thank you very much, counsel. And, Ms. Hart, you have some reserve time. Thank you. The strongest case that supports my client's position is, I believe, the Erskine case, which I previously mentioned in my opening argument. And that case uses some language from, I believe it came from Ballew, is what the defendant understood at the time that he waived his Faretta rights and exercised his Faretta rights. At the time that he did that, you look at whether the defendant's eyes were wide open. What my client realized at the time that he changed his desire from having an attorney to go pro se was simply that there had been a 30-year offer and there had been a 20-year offer. Nowhere was he fully explained as to the ramifications of the penalties in this case. And I don't think that one can point to the fact that plea agreements were sent to the client. When a plea agreement is entered in open court, a district court judge tediously and exquisitely goes into these waivers. The plea agreement was simply something that was given to the attorney. And the client said that he was aware of what the offers were in the plea agreement. But as to whether he read and knew about all the penalties outlined in the plea agreement, and nowhere in either of those plea agreements was it ever stated that the total exposure was 120 years. Thank you very much, counsel. Your time has expired. Thank you. The case just argued will be submitted for decision.
judges: O'SCANNLAIN, Sack, BEA